UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HALLMARK CARE SERVICES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERIOR COURT OF STATE OF WASHINGTON FOR SPOKANE COUNTY; SPOKANE COUNTY,<br><br>Defendants. | NO. 2:17-CV-00129-JLQ<br><br>MEMORANDUM OPINION AND ORDER RE: MOTION TO DISMISS AND MOTION FOR CR 11 SANCTIONS |

BEFORE THE COURT is the Defendants' Motion to Dismiss (ECF No. 11) and Defendants' Motion for CR 11 Sanctions (ECF No. 18). After the Motion to Dismiss was filed, the court directed the parties to address the *Rooker-Feldman* doctrine in the Response and Reply briefs because it was not addressed in the Motion. *See* (ECF No. 16). The parties submitted response and reply briefs on both Motions. This Order memorializes the court's ruling on the Motions.

### I. Introduction/Background

All well-pleaded facts are accepted as true for the purposes of the Motion to Dismiss.

On March 13, 2015, the Washington State Supreme Court issued an order suspending Lori Petersen from the practice of guardianship for one year. *See* (ECF No. 1-

ORDER - 1

1 at 2-3).¹ The Supreme Court also ordered Petersen to pay costs to the Certified Professional Guardian Board. (ECF No. 1-1 at 3). The suspension was set to begin on March 20, 2015. (ECF No. 1-1 at 2-3).

On March 17, 2015, Spokane County Superior Court Commissioner Rachelle Anderson sent a letter to Petersen acknowledging receipt of the Supreme Court order and directing Petersen to submit a "specific plan as to each individual you represent" no later than 4:00 p.m. on March 19, 2015. (ECF No. 1-1 at 5). The letter attached a list of guardianship cases, some of which were assigned to Petersen, and others to Hallmark Care Services, Inc. ("Hallmark"), doing business as Castlemark Guardianship and Trust ("Castlemark"), and Hallmark Care Services, Inc., doing business as Eagle Guardianship and Professional Services ("Eagle"). (ECF No. 1 at ¶14).

On March 18, 2015, attorney John Pierce, representing Petersen, sent a letter to Commissioner Anderson stating counsel was filing a motion with the Washington Supreme Court seeking to stay the suspension for 60 to 90 days. (ECF No. 1-1 at 7). Counsel's letter disclosed Petersen would be petitioning the court to transfer her cases to another guardian, but asserted the process would take "approximately 4-6 weeks." (ECF No. 1-1 at 7-8). Additionally, counsel disputed whether cases assigned to Castlemark or Eagle were subject to the suspension order. (ECF No. 1-1 at 7).

On March 26, 2015, the Washington Supreme Court granted a stay of the suspension to allow Petersen to work with the Certified Professional Guardian Board to ensure her clients were properly transferred to another guardian. (ECF No. 1 at ¶18).

---

¹ On a motion to dismiss, the court may consider "material which is properly submitted as part of the complaint" and documents whose "authenticity ... is not contested" without converting the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (citations omitted). The court may also take judicial notice of "matters of public record." (*Id.*) (citation omitted).

ORDER - 2

On April 1, 2015, Lewis County Superior Court Judge James Lawler, a member of the Certified Professional Guardian Board, sent Petersen a letter stating the Board would review the status of all guardianships associated with Petersen. (ECF No. 1-1 at 10). The letter directed Petersen to provide information by April 10, 2015, including: all guardianship appointments in the name of Lori Petersen, Empire Care, Castlemark, Hallmark, or Eagle; a plan for compliance with transferring her cases to another guardian; and information about every person associated with any guardianship business where Petersen was a designated guardian or an individual certified professional guardian. (ECF No. 1-1 at 10-11).

On April 1, 2015, Hallmark held a shareholders meeting and elected a new director, officer, and proxy to ensure Petersen was not involved in the business during her one year suspension. (ECF No. 1 at ¶¶22-23). Hallmark also added another professional guardian. (ECF No. 1 at ¶24).

On April 7, 2015, Hallmark received four documents from the Spokane County Superior Court Guardianship Monitoring Program Coordinator. (ECF No. 1 at ¶27). The first document was a letter from Spokane County Superior Court Judge Kathleen O'Connor addressed to Hallmark stating "Hallmark/Castlemark/Eagle's ownership is in question" because the ownership was "confidential." (ECF No. 1-1 at 19). Because ownership had not been disclosed to the court "[d]espite inquiries on multiple occasions," the letter stated Petersen's association with those agencies was brought "into question." (ECF No. 1-1 at 19). The letter stated "[t]he Court will not appoint as a successor guardian any certified professional guardian associated with Hallmark or with entities falling under the Hallmark umbrella." (ECF No. 1-1 at 19). Additionally, the letter stated a special master would be appointed "to oversee the transition process and individual guardians ad litem will determine successor guardians." (ECF No. 1-1 at 19). Lastly, the letter required Hallmark to post a $100,000 surety bond to secure payment of fees. (ECF No. 1-1 at 19).

ORDER - 3

The second document was a letter from Judge O'Connor to local certified professional guardians. (ECF No. 1-1 at 21). The letter disclosed that guardians ad litem would be contacting the recipients "to take on several cases due to the recent suspension of CPG Lori Petersen." (ECF No. 1-1 at 21).

The third document was a letter from Judge O'Connor to local guardians ad litem informing them the court would be assigning 125 cases "currently assigned to Ms. Petersen and/or agencies with which she is involved." (ECF No. 1-1 at 21).

The final document was an Order Appointing Special Master, signed by Spokane County Superior Court Judge Ellen Kalama Clark for the 125 cases discussed in the prior letters. (ECF No. 1-1 at 26-32). The Order appointed retired Superior Court Judge Paul Bastine as special master. (ECF No. 1-1 at 31).

On April 7, 2015, attorney Pierce, representing Hallmark, sent a letter to Judge Lawler in response to the April 1 letter. (ECF No. 1-1 at 15-17). The letter states Petersen was in the process of "transferring certain cases" to Hallmark. (ECF No. 1-1 at 15). The letter stated Hallmark had moved to be appointed as successor guardian in Petersen's cases. (ECF No. 1-1 at 15). The letter also referred to letters and orders from Judge O'Connor and Judge Kalama Clark. (ECF No. 1-1 at 15-16).

On April 17, 2015, Petersen and Hallmark contested the actions of the Spokane County Superior Court by filing a motion for reconsideration. (ECF No. 1 at ¶34). The motion for reconsideration argued the Superior Court: (1) lacked jurisdiction to expand on the Supreme Court Order suspending Petersen; (2) lacked authority to order the $100,000 bond and appointment of special master; and (3) failed to give Hallmark due process because it allegedly did not receive notice or a right to appear and defend against the Order Appointing Special Master. (ECF No. 1 at ¶34). The motion also sought clarification of a number of issues regarding who was presiding over the reassignment of

ORDER - 4

guardianships and whether there was a hearing that led to the Order Appointing Special Master. (ECF No. 1 at ¶35).

On May 4, 2015, Spokane County Superior Court Commissioners held a hearing wherein Petersen and Hallmark were removed as guardians of record. (ECF No. 1 at ¶36). Counsel for Hallmark and Petersen was present at the hearing and objected to the removal of his clients in each of the cases. (ECF No. 1 at ¶¶38-39).

On May 8, 2015, a deputy prosecutor from the Spokane County Prosecutor's Office entered a limited notice of appearance on behalf of the Spokane County Superior Court. (ECF No. 1 at ¶42). The deputy prosecutor then filed a memorandum in support of the court's Order and actions taken with regard to Petersen and Hallmark. (ECF No. 1 at ¶44).

On May 13, 2015, a hearing was held where counsel for Petersen and Hallmark was present, but the deputy prosecutor was not. (ECF No. 1 at ¶46). Counsel informed the court that a deputy prosecutor had appeared on behalf of the Superior Court and asserted the hearing should be postponed until the deputy prosecutor was present. (ECF No. 1 at ¶47). The hearing proceeded without the deputy prosecutor present. (ECF No. 1 at ¶47).

On May 18, 2015, Petersen and Hallmark's motion for reconsideration was heard by Judge Kalama Clark. (ECF No. 1 at ¶¶50, 52). Counsel for Petersen and Hallmark presented argument on the issues raised in the motion. (ECF No. 1 at ¶51). In the court's ruling on the motion, Judge Kalama Clark stated the court was the petitioner in the proceedings and the Order Appointing Special Master was presented *ex parte*. (ECF No. 1 at ¶52). It appears the court denied the motion for reconsideration. *See* (ECF No. 1 at ¶52).

On May 13, 2015, Petersen and Hallmark filed a notice of appeal to Division III of the Washington Court of Appeals regarding the Order Appointing Special Master. *See In re Guardianship of Holcomb*, No. 33356-6, Dkt. #1 (Wash. Ct. App. Div. III). On July 23, 2015, the Court of Appeals issued a motion to determine appealability. (*Id.* at Dkt. #26); (ECF No. 12-1 at 23). After receiving briefing, a Commissioner for the Court of Appeals

ORDER - 5

issued an order on August 26, 2015. (ECF No. 12-1). The Commissioner found neither Petersen nor Hallmark were aggrieved parties based on their removal as guardians. (ECF No. 12-1 at 23-25). The Commissioner further found Hallmark was an aggrieved party as to the order assessing fees against it. (ECF No. 12-1 at 26).

A review of the online docket shows the state court appeal was eventually dismissed by Division III in April 2017, and a motion for discretionary review was filed in the Washington Supreme Court on May 1, 2017. *See* No. 33356-6 (Wash. Ct. App. Div. III); Dkt. #1, No. 94454-7 (Wash. Sup. Ct.). The Washington Supreme Court denied the motion on June 22, 2017 and no further filings have been made. *See* No. 94454-7 (Wash. Sup. Ct.).

On April 6, 2017, Petersen and Hallmark ("Plaintiffs") initiated the instant federal court action by filing the Complaint. (ECF No. 1). The Complaint alleges six causes of action against the Spokane County Superior Court and Spokane County ("Defendants"): (1) lack of due process by failing to follow the state rules of civil procedure and local court rules regarding initiating a civil action; (2) judicial abuse of authority by taking *ex parte* action against and issuing *ex parte* orders against Petersen and Hallmark in cases those judges and commissioners were not assigned; (3) lack of due process by failing to follow the process for removal of a guardian under the Revised Code of Washington; (4) lack of due process by failing to follow the process set forth by the Certified Professional Guardian Board for removal of a guardian; (5) lack of due process by failing to give due regard to the definitions of good standing for a certified professional guardian or certified professional guardianship under state court rules; and (6) breach of the separation of powers doctrine by taking executive administrative actions against Petersen and Hallmark. (ECF No. 1 at ¶¶58-67).

On May 19, 2017, Defendants filed the Motion to Dismiss (ECF No. 11). The Motion argues Defendants are entitled to absolute judicial immunity, Plaintiffs lack any

ORDER - 6

property right in continued guardianships, and Plaintiffs' claims are barred by *res judicata*. (ECF No. 11). On June 8, 2017, the court held a telephonic hearing in this matter wherein the court raised the issue of whether Plaintiffs' claims are barred under the *Rooker-Feldman* doctrine and subsequently issued an Order on this issue. (ECF No. 16). On June 15, 2017, Plaintiffs filed a Response to the Motion to Dismiss and addressed the *Rooker-Feldman* doctrine. (ECF No. 17). On June 27, 2017, Defendants filed a Reply. (ECF No. 20).

On June 20, 2017, Defendants filed a Motion for CR 11 Sanctions. (ECF No. 18). The Motion seeks costs and attorneys' fees based on Plaintiffs' claims being frivolous. (ECF No. 18). On June 23, 2017, Plaintiffs filed a Response. (ECF No. 19). On June 28, 2017, Defendants filed a Reply. (ECF No. 22).

Both the Motion to Dismiss and Motion for Sanctions were submitted for decision without oral argument.

## II.   Discussion

### A.   Motion to Dismiss

To survive a motion to dismiss, the pleading must allege sufficient facts, which, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "the court accepts the facts alleged in the complaint as true." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). However, a claim may be dismissed "based on the lack of a cognizable legal theory." (*Id.*). While a court may not generally consider evidence outside of the complaint in a Fed.R.Civ.P. 12(b)(6) motion, the court may consider "material which is properly submitted as part of the complaint" and documents the complaint

ORDER - 7

"necessarily relies" on and whose authenticity "is not contested." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)). A motion brought under Fed.R.Civ.P. 12(c) is "functionally identical" to a motion under Fed.R.Civ.P. 12(b)(6) and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The "principal difference" between the two motions "is the tim[ing] of filing." (*Id.*).

   **1.** *Rooker-Feldman*

Under *Rooker-Feldman*, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). The doctrine takes its name from two Supreme Court decisions: *Rooker v. Fidelity Trust*, 263 U.S. 413 (1923) and *District of Columbia v. Feldman*, 460 U.S. 462 (1983).

Federal courts must dismiss the complaint "if claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003); *see Worldwide Church of God v. McNair*, 805 F.2d 888, 892 (9th Cir. 1986) ("claims are 'inextricably intertwined' if the district court must 'scrutinize not only the challenged rule itself but the [state court's] application of the rule."). "*Rooker-Feldman* looks to federal law to determine 'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Bianchi*, 334 F.3d at 900-01 (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)); *see also*, (*id.* at 900) (stating the *Rooker-Feldman* doctrine "does not require [the federal court] to determine whether or not the state court fully and fairly adjudicated the constitutional claim. Nor is it relevant whether the state court's decision is res judicata or creates the law of the case under state law.").

ORDER - 8

Plaintiffs argued to the Spokane County Superior Court that the actions taken were unconstitutional, beyond statutory and court rule authority, and were done *ex parte* without notice or opportunity to be heard by Plaintiffs. *See* (ECF No. 1 at ¶¶34, 46-47). When their motion was denied, Plaintiffs appealed to the Washington State Court of Appeals and Washington State Supreme Court. *See* (ECF No. 12-1); *In re Guardianship of Holcomb*, No. 33356-6 (Wash. Ct. App. Div. III); No. 94454-7 (Wash.).

Each of Plaintiffs' six causes of action herein challenges the specific acts taken against Plaintiffs and alleges those acts were unconstitutional. *See* (ECF No. 1 at ¶¶58-67). Plaintiffs seek damages for "the wrongful damage to the businesses of Hallmark and Petersen including the wrongful taking, without due process, of all of the Plaintiff's [sic] goodwill and going concern of their business." (ECF No. 1 at ¶68). To find for Plaintiffs on any one of their claims, the court would have to evaluate and find the acts of the Spokane County Superior Court were unconstitutional. Plaintiffs seek to have this court reverse the decisions of the state court system, which is improper and lies beyond this court's subject matter jurisdiction. It is immaterial that those arguments were rejected on procedural grounds on appeal.

To the extent Plaintiffs bring new claims for damages, those claims are inextricably intertwined with the state court decisions. Awarding damages for loss of business goodwill presumes a finding of unconstitutional conduct by the state court. Such arguments are indistinguishable from the arguments made in the state proceedings. Whether Plaintiffs initiated the state court proceedings is immaterial for the *Rooker-Feldman* doctrine, and Plaintiffs cite no cases suggesting otherwise. To the extent the time to seek modification of the Washington Supreme Court's order denying the motion for discretionary review has not passed, the fact the appeal may be technically ongoing does not prevent application of *Rooker-Feldman*. *See In re Birting Fisheries, Inc.*, 300 B.R. 489, 498 n.9 (9th Cir. 2003); *In re Metcalf*, 92 Wn. App. 165, 175 n.6 (1998).

ORDER - 9

For all of the above reasons, the court finds this matter should be dismissed as a *de facto* appeal of state court decisions. Any new claims are inextricably intertwined with the state court decisions and this court could not render judgment for Plaintiffs without disturbing the findings made by the state courts. Additionally, as shown below, the claims are subject to dismissal based on judicial immunity.

### 2. Judicial Immunity

"It is well settled that judges are generally immune from suit for money damages." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001); *see Adkins v. Clark County*, 105 Wn.2d 675, 677 (1986) ("It is well settled judges are immune from liability for damages from acts committed within their judicial capacity, even if accused of acting maliciously and corruptly"). "[J]udicial immunity does not apply to non-judicial acts, i.e. the administrative, legislative, and executive functions that judges may on occasion be assigned to perform." *Duvall*, 260 F.3d at 1133; *see Adkins*, 105 Wn.2d at 677-78 ("To find liability, the actions of the defendant judge must be in clear absence of all jurisdiction, not simply in excess of jurisdiction.... acts by a judge or judicial officer will be protected by immunity from civil action for damages if they are intimately associated with the judicial process.").

"[A] judge will not be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles v. Waco*, 502 U.S. 9, 12-13 (1991) (quotation and citation omitted). "Judicial immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). Judicial immunity is only overcome if the actions were "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity" or were "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12.

The Ninth Circuit considers four factors to determine whether an act is judicial in nature: (1) "the precise act is a normal judicial function"; (2) "the events occurred in the judge's chambers"; (3) "the controversy centered around a case then pending before the judge"; and (4) "the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity." *Duvall*, 260 F.3d at 1133 (quoting *Meek v. County of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999)). "These factors are to be construed generously in favor of the judge and in light of the policies underlying judicial immunity." *Ashelman*, 793 F.2d at 1076; *see also*, (*id.*) ("Jurisdiction should be broadly construed to effectuate the policies supporting immunity").

Washington statutory law states "[a]t any time after establishment of a guardianship or appointment of a guardian, the court may, upon the death of the guardian or limited guardian, or, for other good reason, modify or terminate the guardianship or replace the guardian.... Such action may be taken based on the court's own motion." RCW 11.88.120(1)(a); *see In re Hemrich's Guardianship*, 187 Wn. 21, 26 (1936) ("Acting under the authority of this statute, the court always has power, under proper circumstances, to remove a guardian"). "Although governed by statute, guardianships are equitable creations of the court and it is the court that retains ultimate responsibility for protecting the ward's person and estate." *In re Guardianship of Lamb*, 173 Wn.2d 173, 184 (2011) (quoting *In re Guardianship of Hallauer*, 44 Wn. App. 795, 797 (1986)); *see* RCW 11.92.010 ("Guardians ... shall at all times be under the general direction and control of the court making the appointment."). "The court having jurisdiction of a guardianship matter is said to be the superior guardian of the ward, while the person appointed guardian is deemed to be an officer of the court." *In re Lamb*, 173 Wn.2d at 190 (quoting *Seattle First National Bank v. Brommers*, 89 Wn.2d 190, 200 (1977)).

Contrary to Plaintiffs' argument, the state court could lawfully initiate removal proceedings against Plaintiffs as guardians. As such, Defendants were not acting "in the

ORDER - 11

clear absence of jurisdiction." Rather, the Defendants were acting in a normal judicial function. Whether the statutory procedure was fully followed is immaterial to determine whether judicial immunity attaches. As there is statutory authority for the court to initiate removal proceedings, the court finds Defendants acted in a normal judicial function.

Plaintiffs admit they "have no idea where these events occurred." (ECF No. 17 at 8). The fact Plaintiffs lack personal knowledge is not dispositive in determining whether the events at issue took place in the judge's chambers. All letters were sent on the Superior Court letterhead, and the Order Appointing Special Master bore the signature of Judge Kalama Clark and the seal of the Clerk of the Court. Judge Kalama Clark allegedly stated the Order was presented *ex parte*. This court has no basis to believe these acts were done anywhere other than in the state court judge's chambers. Accordingly, the court finds the acts occurred within the judge's chambers.

As discussed above, the Spokane County Superior Court had the statutory right to initiate removal proceedings. *See* RCW 11.88.120(1)(a). The removal proceedings, while initiated by the court, constitute a case then pending before the court. Plaintiffs' contentions otherwise are unpersuasive. The fact it was initiated by the court does not disqualify it as a pending case, nor does the timing thereof change the analysis. Plaintiffs' claims regarding the failure to follow statutory procedures for removal is not before this court. *See supra* §(A)(1). For these reasons, the court finds the actions of Defendants concerned a then-pending case.

The court observes the unusual factual history of this case where the state court proceedings were initiated by the state court and were not in response to a particular confrontation. However, the fact the matter was initiated by the state court does not make it any less judicial in nature. *See Ashelman*, 793 F.2d at 1078 ("As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies."). The entirety of the proceedings were in fact a confrontation with

ORDER - 12

state court judges acting in their judicial capacity. While the state court was the initiator, this court finds the events at issue were immediately and directly related to acts performed in a judicial capacity.

In light of all of the foregoing, the court finds Defendants are entitled to judicial immunity. Based on the court's rulings on the *Rooker-Feldman* doctrine and judicial immunity, the court will not address the other arguments in the Motion to Dismiss.

**B.     Motion for Fed.R.Civ.P. 11 Sanctions**

Defendants' Motion for Sanctions argues: (1) "Plaintiffs' claims are not warranted by existing law or by a nonfrivolous argument for modifying or reversing existing law"; and (2) "[a]ny attorney conducting a reasonable inquiry of the law before filing these claims would have discovered that they are legally baseless." (ECF No. 18 at 3). Plaintiffs assert the Motion for Sanctions "is a red herring - an attempted distraction by a party who is terrified of the facts that will come out through discovery in the course of this action." (ECF No. 19 at 10). The majority of the parties' briefs re-argue the merits of the claims addressed at length in the Motion to Dismiss briefing.

In the Reply, Defendants, for the first time, cite 42 U.S.C. § 1988 as a basis for an award of attorney's fees. *See* (ECF No. 22 at 2). The court will not consider this basis because it was not raised in the Motion for Sanctions and because Defendants do not otherwise argue or establish a basis for an award pursuant to that statute.

"By presenting to the court a pleading, written motion, or other paper ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed.R.Civ.P. 11(b)(1)-(2). When the complaint

ORDER - 13

is the focus of a motion brought pursuant to Fed.R.Civ.P. 11, "a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quotation marks and citation omitted). For this test, the term "frivolous" means "a filing that is *both* baseless *and* made without a reasonable and competent inquiry." (*Id.*) (emphasis in original) (citation omitted).

As discussed at length *supra*, the court found Plaintiffs' claims barred under the *Rooker-Feldman* doctrine and by judicial immunity. While Defendants are clearly entitled to dismissal of Plaintiffs' claims, the court does not find Plaintiffs' claims are baseless or frivolous. The fact defense counsel did not raise *Rooker-Feldman* until the court brought it to counsel's attention demonstrates the claims were not objectively baseless. The court does not find counsel failed to conduct a reasonable inquiry before filing the Complaint.

### III.    Conclusion

Plaintiffs' claims herein are the same and inextricably intertwined with those made in the Washington state court proceedings. Plaintiffs' arguments against application of the *Rooker-Feldman* doctrine are unavailing. Additionally, Defendants are entitled to judicial immunity. While the court finds dismissal appropriate, the court does not find Plaintiffs' claims frivolous or baseless. Accordingly, the Motion to Dismiss is Granted and the Motion for Sanctions is Denied.

**IT IS HEREBY ORDERED**:

1. The Motion to Dismiss (ECF No. 11) is **GRANTED** as set forth herein.
2. The Motion for CR 11 Sanctions (ECF No. 18) is **DENIED** as set forth herein.

3. The Clerk is directed to enter Judgment dismissing the Complaint (ECF No. 1) and the claims therein **WITH PREJUDICE** and without costs or attorneys' fees to any party.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and Judgment, furnish copies to counsel, and close this file.

Dated July 27, 2017.

s/ Justin L. Quackenbush<br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 15